**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO. 1:16 CR 96** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Robert J. Johnson,** | ) | **Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

In its trial brief, the government asks the Court to exclude certain testimony of Dr. Robert

J. Belloto, Jr., an expert witness offered by the defendant.  Defendant opposes the government's

request.  For the reasons that follow, the request is GRANTED in PART and DENIED in PART.

Although Dr. Belloto may testify about concentrations of fentanyl, including the half-life of

fentanyl and the timing of ingestion, he may not testify as to *what* caused the victim's death.

**ANALYSIS**

Belloto holds a Ph.D. and Masters in Pharmacy from Ohio State University and majored

in chemistry in undergraduate school.  In his report, Belloto opines that "to a reasonable degree

of pharmacological and toxicological certainty, Ms. Ferline did not die from a fentanyl overdose

as the postmortem levels are falsely elevated." In support of his belief, he opines that due to the

wide-ranging half life of fentanyl, it is possible that the victim ingested fentanyl earlier in time

than believed by the government.  Belloto describes literature supporting his position.  In

addition, Belloto notes that:

> It is thus hard to specifically assert that a fentanyl overdose was the cause of death
> without further evidence that the fentanyl was actually injected shortly before her
> collapse and not at a prior time. The fact that she was found with her underwear at her
> knees indicates that an acute event occurred such as sudden cardiac death. This is
> certainly made possible given the pharmacokinetics of fentanyl and the resultant falsely
> elevated nonfatal levels found in individuals who did not die from a fentanyl overdose.
> Furthermore, in the hospital notes (stamped 15-01623, page 9 of 16) Dr. Renuart states
> that they tried to position Ms. Ferline "better to stop the vomit" which is a symptom also
> associated with sudden cardiac death.

> In a subsequent opinion, Belloto opines as follows:

> From the statements that I now have, it appears that Ms. Ferline took a second dose. Had
> the illicit drug been analyzed for the percentage of fentanyl, it may very well have shown
> that there is not enough fentanyl in the package for it to be an overdose. In my reanalysis
> of the confiscated package, I was not able to identify any fentanyl analogs. Checking her
> urine may indeed find an analog or metabolite of an analog and would help account for
> her rapid demise upon injecting a second dose.

> Again, because of the pharmacokinetics of fentanyl, I cannot even declare that the
> fentanyl level measured was due to what Ms. Ferline ingested at approximately 1:00 AM
> on the 25th of August or within the previous 24 hours. It is entirely possible that what was
> ingested was not fentanyl at all but an analog!

> To a reasonable degree of pharmacological and toxicological certainty, Ms. Ferline did
> not die from a fentanyl overdose as the postmortem levels are falsely elevated. She
> certainly could have died from a second narcotic dose especially if it contained a more
> potent analog of fentanyl that the lab did not look for. I hope this information helps. If
> you have any further questions, please do not hesitate to call.

> The government does not object to defendant offering Belloto to testify as to the

postmortem concentration levels of fentanyl in the victim's system.  The government objects,

however, to Belloto testifying as to the victim's cause of death.

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides,

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals Inc*., 509 U.S. 579, 597, 113 S.Ct. 2786 (1993), the trial judge serves as a "gatekeeper" to determine whether an expert's testimony is reliable and relevant.  "The trial judge has considerable leeway in deciding how to go about determining whether particular expert testimony is reliable." *U.S. v. Sanders*, 59 Fed.Appx. 765, 767 (6th Cir. March 7, 2003)(citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167)).

Here, the government argues that Belloto is not qualified to testify regarding the victim's cause of death because he has no medical training.  The Court agrees with the government. There is no indication that Belloto has *any* training or expertise regarding death from cardiac or other events.  Therefore, his testimony would be no more helpful than that of a lay person. Because assessing whether death resulted from a cardiac or other event requires specialized skill or training, and because Belloto wholly lacks any such skill or training, he may not opine as to the victim's cause of death.

The Court finds, however, that Belloto is qualified to testify that based on the chemical properties (including the half-life) of fentanyl, the levels found in the victim's blood are not sufficient to cause death *in general*.  Belloto has been a pharmacist or professor of pharmacy for

3

over 40 years.  It appears from his resume that for at least 20 of those years, Belloto worked as a

pharmacist in a hospital.  In addition, Belloto taught classes in pharamcokinentics, which is the

"the study of the bodily absorption, distribution, metabolism, and excretion of drugs."  Merriam-

Webster.  Belloto further holds a degree in chemistry.  Thus, although the Court agrees with the

government that Belloto may not be qualified to opine as to the victim's cause of death, he is

qualified to opine as to the concentration levels of fentanyl, analogs of fentanyl, and whether

those levels are sufficient to result in death in general.

### CONCLUSION

For the foregoing reasons, the Court finds that the government's request to exclude

Belloto's opinion is GRANTED in PART and DENIED in PART as set forth herein.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 2/13/17